**Francis A. ATKINSON,
Plaintiff–Appellant,**

**v.**

**SHEET METAL WORKERS' TRUST FUNDS OF SOUTHERN CALIFORNIA AND NEVADA, Defendant–Appellee.**

No. 87–5915.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1987.

Decided Dec. 7, 1987.

Carroll A. McCortney, Covina, Cal., for plaintiff-appellant.

Kenneth J. Sackman, Los Angeles, Cal., for defendant-appellee.

Before ALARCON and NELSON, Circuit Judges, and ROSENBLATT, District Judge.[*]

no *new* duty is imposed thereby on either side.

* The Hon. Paul G. Rosenblatt, United States District Judge for the District of Arizona, sitting by designation.

NELSON, Circuit Judge:

 Francis Atkinson challenges the Sheet Metal Workers' Trust Funds' (Trust) decision to suspend his benefits because Atkinson worked as a heating and air-conditioning mechanic for a public school district in violation Article VIII, Section 7 of the Pension Plan (Plan), which precludes early retirees from both receiving pensions and "engagement as an employer or employee for compensation or profit in the sheet metal industry." The district court granted summary judgment for the Trust. We review de novo the determination that the Trustee's interpretation of the Plan is not arbitrary and capricious as a matter of law. *See Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301 (9th Cir.1983). The arbitrary and capricious standard as used in the pension-fund context means that any reasonable resolution by the trustees of an ambiguity in the plan must be upheld. *Smith v. CMTA-IAM Trust*, 654 F.2d 650, 655 (9th Cir. 1981).

The Trust contends that it has reasonably interpreted "sheet-metal industry" to include, not only those employed by firms contributing to the pension fund, but also anyone performing services related to the work done by employees of contributing firms. In support of this interpretation, the Trust points out that its interpretation protects the trust by preventing individuals from collecting pensions while they compete with those who are contributing to the fund.

Atkinson argues that the Trustee's interpretation of "sheet-metal industry" is arbitrary and capricious because: (1) the interpretation is excessively broad, and not supported by the *Fuller* decision on which it purports to rest; and (2) the interpretation is inconsistent with language used in the Plan. Because neither of these arguments persuades us that the Trust's interpretation is arbitrary or capricious, we affirm.

*I. The Interpretation is Excessively Broad in Comparison to Fuller.*

Atkinson claims that the Trust's interpretation of "sheet-metal industry" is arbi-

trary and capricious because it extends the decision in *Fuller v. Sheet Metal Workers' Pension Plan* far beyond the narrow holding of that case. According to Atkinson, discontinuing Fuller's benefits involved a reasonable interpretation of "work within the sheet-metal industry" because Fuller sold items to employers of sheet-metal workers and because the items he sold were made of sheet metal, thus making Fuller both an employer and an employee within the sheet-metal industry. Atkinson, by contrast, works for a school district, which neither sells him sheet metal products nor purchases sheet-metal from him. He claims that he is therefore neither an employer nor an employee in the sheet metal industry.

 We reject Atkinson's argument for several reasons. First, it is unclear that Atkinson effectively distinguishes *Fuller* from his own situation. He does not explain why those who profit by buying and selling sheet-metal products work within the industry, but those who profit by repairing sheet-metal products do not. The distinction between selling items manufactured by sheet-metal workers and repairing those items certainly cannot be justified by the need to protect the Trust Fund. Employers who contribute to the pension funds, in addition to manufacturing sheet metal, also install and repair heating and air-conditioning equipment. To the extent that *Fuller* upheld the Trustees interpretation as reasonable because it allowed the Trust to avoid paying pensions to retired individuals competing with contributors to the fund, the reasoning applies to Atkinson as well. Second, even if *Fuller* approved a less expansive interpretation of the "sheet-metal industry" than would be needed to support suspension of Atkinson's pension, *Fuller* did not suggest that a more expansive approach would be arbitrary and capricious. Finally, that the Trustees' interpretation is not warranted by *Fuller* does not make it arbitrary and capricious because the Trustee's do not rely on *Fuller* as support for their interpretation. The interpretation, committed to writing after the *Fuller* decision, never purported to codify

*Fuller.* Rather, it restated the policy that the Trustees claim to have been applying since the Plan's inception. This policy protects the fund against paying pensions to individuals who compete with contributing employers. That the Trustees' interpretation is broader than the narrowest interpretation needed to support *Fuller* does not make it arbitrary and capricious.

## II. The Trustees' Interpretation Conflicts with other Aspects of the Plan.

Atkinson contends that the prohibition of "engagement as an employer or employee for compensation or profit in the sheet metal industry" cannot apply to all work related in any way to work done by covered employees, because the Plan's definitions of "Employee" and "Individual Employer" directly conflict with this expansive interpretation of sheet-metal industry. He points out that Article I, Sections 3–4 of the Plan define "Individual Employer" as any entity that may be required by a collective bargaining agreement to make payments to the fund, and "Employee" as anyone doing covered work for an "Individual Employer." From these definitions, Atkinson infers that one cannot be an employee within the sheet-metal industry unless one does covered work for an entity that could be made to contribute to the fund under a collective bargaining agreement. Because his employer could not be made to contribute to Appellee's fund, Atkinson argues, his employer is not an Individual Employer under the Plan, and he therefore cannot be an employee in the sheet-metal industry.

We reject this argument because it does not distinguish the special definitions given by the Plan to "Individual Employer" and "Employee" (capital I and E) from the Plan's traditional use of the terms "employer" and "employee" (lower case e). The Plan uses capitalized words whenever the specific definitions given by Article I, Sections 3–4 are intended. Article VIII, Section 7 itself employs the distinction by prohibiting a retired "*E*mployee" from "engagement as an *employer* or *employee* ... in the sheet metal industry." (emphasis added). Because the Plan uses the capitalized terms consistently throughout the document, it is not arbitrary or capricious for the Trustees to insist upon the distinction.

## III. Attorneys' Fees

■ Atkinson seeks attorneys' fees as provided for by 29 U.S.C. § 1132(g), which permits courts, at their discretion, to award reasonable attorneys' fees. We decline to award such fees. The elements to be considered in exercising discretion to award fees include: "(1) the degree of the opposing parties' culpability; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Hummell v. S.E. Rykoff Co.*, 634 F.2d 446, 452–53 (9th Cir. 1980). These elements weigh against awarding fees in this case. The Trust does not seem to be acting culpably or to require any deterrence. Atkinson's position has little merit.

## CONCLUSION

We affirm the district court's decision to dismiss Atkinson's claim. The Trust did not act unreasonably by interpreting "within the sheet-metal industry" to include all work related to work done by covered employees. This interpretation appears to serve a legitimate purpose by protecting the fund. Atkinson's arguments that the interpretation is arbitrary and capricious are incorrect. Although the decision to grant attorneys' fees is within this court's discretion, there appears to be no reason to grant them in this case. AFFIRMED.